UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KARL E. PAANANEN,

Plaintiff,

v.

PECKHAM, INC.,

Defendant.
_______________________________________/

Hon. Hala Y. Jarbou

Case No. 1:25-cv-573

**ORDER**

Plaintiff Karl Paananen, proceeding *pro se*, brings this lawsuit against Defendant Peckham, Inc., his current employer, alleging violations of the Americans with Disabilities Act (ADA), 42 U.S.C., § 12101 *et seq*. Before the Court are Paananen's objections (ECF No. 61) to the report and recommendation of the magistrate judge (R&R, ECF No. 60) that Peckham's motion for summary judgment (ECF No. 54) be granted as to all of Paananen's claims. Peckham has filed a response to Paananen's objections. (ECF No. 66.) Under Rule 72 of the Federal Rules of Civil Procedure:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3). For the reasons discussed below, the Court will overrule Paananen's objections and adopt the R&R.

## I. BACKGROUND

The R&R comprehensively describes the factual background of this case, so the Court provides only a brief overview here. In June 2023, Paananen was employed by Peckham as a

customer service representative in its Customer Interaction Center. At the time, Paananen was on a performance improvement plan (PIP) due to his inability to meet productivity standards and other performance issues. (Foreman Decl. ¶ 11, ECF No. 54.) While on the PIP, he applied to be a customer service representative in the National Passport Information Center (NPIC), another Peckham-staffed position. (*Id.* ¶ 12.) Due to his ongoing performance issues, his vocational services specialist (VSS) strongly recommended that he not be considered for the NPIC role. (*Id.* ¶ 13.)

On July 17, 2023, Peckham terminated Paananen's employment. (ECF No. 54-11, PageID.271.) Following his termination, his supervisor and his VSS determined that based on his prior performance issues, he should not be re-employed in the Customer Interaction Center. (*See* R&R 5.) On August 2, 2023, Abi Kortum, a Peckham employee, emailed Karl to tell him that "as mentioned to [him] a couple of weeks ago," his application for NPIC was "declined based on some feedback from [his supervisor] about it not being a good fit." (Kortum Email, ECF No. 56-5, PageID.341.)

Inside Peckham, staff determined that Paananen would need to attend a minimum of six months of counseling before he could be considered for a new call center position. (Answers to Interrogatories 3, ECF No. 54-15.) Counseling had benefited Paananen in the past, and staff were hopeful that additional counseling would help him overcome the behavioral issues that had negatively impacted his job performance. (Foreman Decl. ¶ 16.) On August 15, 2023, Victoria Gillespie, another Peckham employee, notified Paananen that Peckham was requiring him to, among other things, attend six months of counseling "before applying to a new position within Peckham's Contact Center jobs." (Gillespie Letter, ECF No. 54-17, PageID.299.) The purpose of the six-month counseling requirement was to set a sufficient period for Paananen to demonstrate

the necessary growth, improvement, and stability to work at NPIC, which was an increasingly busy and at times stressful call center. (ECF No. 54-16, PageID.295.) On November 15, 2023, Peckham certified that Paananen had completed the counseling requirement, crediting him three months of pre-termination counseling. (ECF No. 54-18, PageID.302–304.) He was rehired by Peckham in February 2024 for a call center role. (Paananen Dep. 19, ECF No. 55-1.)

## II. ANALYSIS

Paananen argues that the counseling requirement imposed by Peckham violated the ADA. Under the ADA, "a covered entity shall not conduct a medical examination or make inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability." 42 U.S.C. § 12112(d)(2)(A). But § 12112(d) does not prohibit all medical inquiries. Employers may impose counseling requirements on returning employees when doing so is "job-related and consistent with business necessity." *Kroll v. White Lake Ambulance Authority*, 763 F.3d 619, 623 (6th Cir. 2014).

Here, the R&R rejected Paananen's claims for two related reasons. It first concluded that Paananen failed to connect the counseling demand to his June 2023, application to be a customer service representative at NPIC because Peckham staff had already decided he was "not a good fit for the position" earlier that summer. (*See* R&R 11.) Consequently, the R&R determined that Paananen was not a job applicant under § 12112(d) when Peckham imposed the counseling requirement because he did not have a pending job application with Peckham at the time. (*Id.* at 12.)

Paananen has filed eight objections to the report and recommendation, several of which contain overlapping themes. They can be sorted into four lines of argument: *First*, that the R&R erred in relying on caselaw that have facts distinguishable from this case; *second*, that contra the R&R, Paananen was a job applicant under § 12112(d) at the time Peckham imposed the counseling

requirement because the imposition of that requirement was connected to his June 2023 application for the NPIC job; *third*, and relatedly, that there is inadequate evidence in the record to support Peckham's argument that the counseling requirement was job-related and consistent with business necessity; and *fourth*, that the counseling requirement independently violated the ADA.

In his first and sixth objections, Paananen argues that the magistrate judge's reliance on *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667 (1st Cir. 1997) and *Hunault v. FCA US LLC*, No. 15-12772, 2016 WL 11474781 (E.D. Mich. Oct. 26, 2016), *adopted by* 2016 WL 7092981 (E.D. Mich. Dec. 6, 2016) was error. He distinguishes these cases on the grounds that both involved "one-time assessments," not a sixth month course of treatment as was the case here.[1] (Objs., PageID.365–66.) He next argues that *Grenier* and *Hunault* are inapposite because those cases concerned employees seeking reinstatement to the same position, while here Paananen was seeking employment for a different job within Peckham. (*Id.*, PageID.369–70.)

The principal problem with Paananen's first and sixth objections is that the R&R does not *actually* rely on those cases for its conclusions. The R&R references *Grenier* for a broad statement on the purpose of § 12112(d) (*see* R&R 9); and it cites *Hunault* for the proposition that because the ADA does not define "job applicant," a court must interpret the word according to its ordinary meaning. (R&R 12.) Paananen does not contest *Grenier*'s gloss on the purpose of § 12112(d),

[1] Paananen also claims that the First Circuit in *Grenier* "distinguished between a 'medical release' (a progress report from a treating physician) and 'a comprehensive evaluation from a general practitioner testing a worker for physical or mental impairments.'" The Court is unable to locate this quote, or any variation of it, in *Grenier*. The Court assumes that this fictitious citation, which does not appear in his original response brief (*see* Pl.'s Resp. 8–9, ECF No. 56), was the product of Paananen using generative artificial intelligence ("AI"). As this Court has stated before, "it is improper and unacceptable for litigants—including pro se litigants—to submit 'non-existent judicial opinions with fake quotes and citations.'" *Lothamer Tax Resolution, Inc. v. Kimmel*, No. 1:25-cv-579, 2025 WL 2490380, at *14 (W.D. Mich. Aug 29, 2025) (quoting *Anonymous v. N.Y.C. Dep't of Educ.*, No. 1:24-cv-04232, 2024 WL 3460049, at *7 (S.D.N.Y. July 18, 2024)). Citations to fabricated quotes or caselaw needlessly waste the resources of the Court and the opposing party and constitute sanctionable conduct under Rule 11 of the Federal Rules of Civil Procedure. Because Paananen, as a *pro se* litigant, may not have recognized the inherent risks of using AI to draft his objections, the Court will not impose sanctions at this time. Future use of fictitious quotes, however, will result in sanctions being imposed.

nor does he contest the rule from *Hunault* that undefined statutory terms are interpreted in accord with their ordinary meaning. *See Binno v. Am. Bar. Assoc.*, 826 F.3d 338, 346 (6th Cir. 2016) (holding that the word "offer" in another part of the ADA should be interpreted "using its ordinary meaning"). For its part, the R&R does not rely on either case in determining that Paananen was not a "job applicant" within the meaning of § 12112(d) at the time Peckham imposed the counseling requirement, nor to determine whether the counseling requirement was a "medical examination" under § 12112(d). Indeed, it does not make any conclusions as to the latter question. Therefore, even presuming that *Hunault* and *Grenier* can be distinguished on the grounds that Paananen puts forth in his first and sixth objections, those distinctions are irrelevant to the outcome of this case.

In his fourth objection, he contests the R&R's reliance on *Hannah P. v. Coats*, 916 F.3d 327 (4th Cir. 2019). In *Hannah P.*, the Fourth Circuit held that a current employee who was "considering applying" for a position with the defendant employer was not a "job applicant" under § 12112(d). *Id.* at 338. Borrowing this logic, the R&R held that a "job applicant" under the ADA is limited "only to current candidates, i.e., individuals actively under consideration." (R&R 12.) Paananen does not challenge the soundness of *Hannah P.*'s rule, but rather the R&R's conclusion that he fell within its scope. In essence, he argues that he had a live application for a customer service role with Peckham that was actively under consideration at the time Peckham set the counseling requirement.

This argument is belied by the record. Even if Paananen was at one point a job applicant for a position within NPIC (which the R&R acknowledges), he ceased to be so after Peckham terminated his employment on July 17, 2023. This action "rendered his application moot." (Foreman Decl. ¶ 18.) Paananen's subjective belief to the contrary is refuted by his own exhibit.

According to an email from Abi Kortum to Paananen on August 2, 2023, Peckham staff had told him "a couple of weeks ago" that his application for the customer service job "was declined based on some feedback from [his] VSS about [the job] not being a good fit." (Kortum Email, PageID.341.) Therefore, after receiving this email, and likely beforehand, Paananen was on notice that his June 2023 application had been rejected.

In his seventh objection, Paananen argues that the R&R erred in determining Peckham's counseling requirement was unrelated to his June 2023 application for the customer service role within NPIC. Specifically, Paananen argues that the August 15, 2023, letter from Victoria Gillespie to Paananen, in which the counseling demand is made, specifically references the customer service role he applied for in June 2023, which "shows that the letter was written with [his] application in mind." (Objs., PageID.370.) He also argues that the Gillespie letter never informed Paananen that his application was "void or moot," and was in fact a "response to [his] inquiries about his existing application." (*Id.*)

There is nothing in the letter that references his June 2023 application. To the extent the Gillespie letter references a call center position at all, it does so *prospectively* and *conditionally*. It states that should Paananen apply in the future for a call center position, he must "observe the job after [the] interview" because there have been "significant changes in contract operations and environment." (Gillespie Letter, PageID.299.) The Gillespie letter's consistent use of a future tense confirms that Paananen was required to *reapply* for a job after satisfying the conditions set out in the letter. In the first sentence, Gillespie writes that Paananen must "complete the following" items, including a sixth month counseling requirement, "before applying to a new position within Peckham." (*Id.*) After listing the requirements, Gillespie explains that failure to "complete the above within 6 months" will mean Paananen "will not be eligible for an Interview and any

applications will not be considered." (*Id.*) At the end of the letter, she reiterates that "[u]pon fulfilling these requirements, should a position be open that you qualify for, you are welcome to apply." (*Id.*) These repeated invitations for Paananen to submit new applications once he is eligible to do so defeat any reasonable inference that the letter was linked to Paananen's June 2023 application.

In his third and eighth objections, Paananen argues that Peckham's imposition of the counseling requirement violated the ADA's interactive process framework. *See* 29 C.F.R. § 1630.2(*o*)(3). "Although mandatory, failure to engage in the interactive process is only an independent violation of the ADA if the plaintiff establishes a prima facie showing that he proposed a reasonable accommodation." *Rorrer v. City of Stow*, 734 F.3d 1025, 1041 (6th Cir. 2014). In his objections, Paananen agrees that the interactive process occurs only "upon notification of the disability and the desire for accommodation." (Objs., PageID.368.) Because Paananen admits he did not request an accommodation (Pl.'s Resp. 10), he cannot claim an independent violation of the ADA's interactive process requirement.

In his second and fifth objections, Paananen raises two new arguments that the counseling requirement independently violated the ADA. Absent compelling reasons to the contrary, "issues raised for the first time in objections to [a] magistrate judge's report and recommendation are deemed waived." *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) (quoting *Marshall v. Chater*, 75 F.3d 1421, 1426–27 (10th Cir. 1996)). Having offered none, Paananen has waived these arguments by failing to raise them in his response to Peckham's motion for summary judgment.

Even considered on their merits, Paananen's second and fifth objections do not move the needle is his favor. In his second objection, Paananen argues the counseling requirement violates

42 U.S.C. § 12203(b), which makes it "unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise" of their rights under the ADA. But there is no evidence in the record that Peckham sought to impose this requirement to interfere with Paananen's ADA rights. Rather, Peckham imposed the counseling requirement as a condition precedent to future employment because it "had a reasonable basis for believing that [Paananen] was unable to perform the essential functions" of working in its call center. *Kroll*, 763 F.3d at 624. As detailed in the R&R, Paananen had a long history of performance issues (*see* R&R 3–7), and Peckham was entitled to assure itself that Paananen, as a returning employee, would be able to perform the essential functions of a customer service representative at NPIC. *See Harris v. Harris & Hart, Inc.*, 206 F.3d 838, 844–45 (9th Cir. 2000) (holding the ADA does not prohibit an employer from requiring a former employee with a known disability to complete a medical examination "to determine his fitness to perform essential job functions"). Thus, his second objection provides no grounds on which to reject the R&R.

In his fifth objection, Paananen argues that Peckham's counseling demand was not rooted in "reasonable belief based on objective evidence," *Kroll*, 763 F.3d at 623, because it relied on a decade-old evaluation of Paananen's disability in imposing the counseling requirement. This assertion lacks merit. As detailed in the R&R, Peckham relied on Paananen's documented performance deficiencies in 2022 and 2023, including the fact that Paananen could not meet the requirements of his PIP, which was in place for over sixteen months, along with contemporaneous evaluations by Paananen's supervisors that he was not meeting the minimum requirements of his position. (*See* R&R 3–4.) The fact that Paananen appears to be performing well in his current role is not relevant because Peckham had only his past performance to consider when it made the

counseling demand in August 2023. Therefore, the Court rejects Paananen's fifth objection because it is not supported by the record.

Accordingly,

**IT IS ORDERED** that the R&R (ECF No. 60) is **APPROVED** and **ADOPTED** as the opinion of the Court.

**IT IS FURTHER ORDERED** that Paananen's objections to the R&R (ECF No. 61) are **OVERRULED**.

**IT IS FURTHER ORDERED** that Peckham's motion for summary judgment (ECF No. 54) is **GRANTED**.

The Court will enter a judgment dismissing the case.

Dated: October 23, 2026

/s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE